UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIMBERLY CLARK,

                                  Plaintiff,

v.                                                                                             5:14-CV-00073

                                                                                           (TJM/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| STEVEN R. DOLSON, ESQ.<br>*Counsel for Plaintiff*<br>126 North Salina Street<br>Syracuse, New York, 13202 | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney for the<br> Northern District of New York<br>*Counsel for Defendant*<br>Room 218<br>James T. Foley U.S. Courthouse<br>Albany, New York 12207 | GRAHAM MORRISON, ESQ.<br>Special Assistant United States Attorney |
| OFFICE OF GENERAL COUNSEL<br>Social Security Administration<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 | STEPHEN P. CONTE, ESQ.<br>Chief Counsel, Region II |

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**REPORT AND RECOMMENDATION**

     This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C.

1

§ 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard. For the reasons discussed below, it is recommended that the Commissioner's decision be affirmed.

I.     BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff was born on June 14, 1975. (Administrative Transcript at 39, 171, 191.[1]) She has a GED, and has received training as a pharmacy technician and as a home health aide. (T. at 41, 43, 196.) She has a driver's license and is able to drive, and has previously worked as a home health aide, assembler, disability aide, and warehouse picker. (T. at 41, 43-44, 59-60, 197.) Plaintiff alleges disability due to psychiatric conditions of bipolar disorder, depression, anxiety, anger management problems, and bulimia. (T. at 44, 195.)

Plaintiff protectively applied for social security and disability insurance benefits on May 17, 2011, alleging disability as of March 25, 2010. (T. at 175, 191.) The application was initially denied on October 12, 2011. (T. at 85-87.) Plaintiff requested a hearing which was held on August 27, 2012, before Administrative Law Judge ("ALJ") Susan Wakshul, who denied the application in a decision dated October 19, 2012. (T. at 17-28, 34-78.) On January 1, 2014, ALJ Wakshul's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. (T. at 1-6.) Plaintiff timely commenced this action on January 23, 2014. (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referenced as "T" herein.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2006). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2013). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.)  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.* (quoting *Perry v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010);² *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. THE ALJ'S DECISION

The ALJ first determined that Plaintiff did not engage in substantial gainful activity since her alleged disability onset date of March 25, 2010. (T at 19.) The ALJ found at step two of the sequential evaluation that Plaintiff had the "severe" impairments of asthma, status post right elbow dislocation, anxiety, and depression. (T. at 19.) At step three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the criteria of an impairment

---

² On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

contained in the Listing of Impairments. (T. at 20.)

The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in the Commissioner's regulations at 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that "she is limited to occasional exposure to environmental irritants, extremes in temperature, wetness, and humidity; she requires a low stress job, defined as no production paced work or quotas, occasional changes to work setting, occasional use of judgment, and occasional decision making; she is limited to occasional and superficial interaction with others; she can frequently handle and finger with the right upper extremity; and she is limited to simple routine and repetitive tasks." (T. at 21.)

At the fourth step, the ALJ concluded that Plaintiff could not perform any of her past relevant work. (T. at 25-26.) At the fifth step, ALJ Wakshul utilized the opinion of a vocational expert to reach the determination that Plaintiff could make an adjustment to other work existing in significant numbers in the national economy. (T. at 26-27.) The ALJ then concluded that Plaintiff was not disabled, and denied her claims for benefits. (T. at 28.)

## IV. THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ's determination of Plaintiff's RFC was erroneous because she failed to properly follow the treating physician rule. (Dkt. No. 12 at 3-7.) Plaintiff also claims that the ALJ improperly relied on erroneous testimony from the vocational expert. *Id*. at 7-9. Defendant contends that the weight the ALJ gave to the medical opinions was appropriate, and the testimony elicited from the vocational expert was likewise proper; therefore, the ALJ's decision applied the correct legal standards, is supported by substantial evidence, and should be affirmed. (Dkt. No. 16.)

## V. DISCUSSION

### A. Opinion Evidence and the RFC Determination

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. 20 C.F.R. § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*. 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430,

440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used to determine the particular types of work a claimant may be able to perform. *Whittaker*, 717 F. Supp. 2d at 440.

Plaintiff argues that the ALJ improperly dealt with the medical opinion provided by treating source, Leland Jackson, M.D., because the ALJ accorded Dr. Jackson's opinion "little weight" instead of controlling weight. (Dkt. No. 12 at 3-7; T. at 23-24.) The ALJ gave "partial weight" to the opinion of consultative examiner Christina Caldwell, Psy.D., concerning Plaintiff's ability to handle stress, and "great weight" to Dr. Caldwell's remaining opinions. (T. at 24.) The ALJ also gave "great weight" to the State Agency psychology reviewer, R. Nobel. (T. at 24-25.) As discussed in more detail below, I find that the ALJ did properly analyze these opinions since the evidence upon which the ALJ relied in assigning weight to each opinion was substantial and supported by the record.

    1.    <u>Treating Physician Rule</u>

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2). Medically acceptable techniques include consideration of a patient's report of complaints and the patient's history as essential diagnostic tools. *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight

the Commissioner will give to the physician's medical opinions. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)(I)).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

An ALJ who refuses to give "controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.*; *see also Zabala v. Astrue*, 595 F.3d 402 (2d Cir. 2010) (finding that the ALJ failed to satisfy the treating physician rule when he discounted a report because it was incomplete and unsigned). These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. *Id.* at § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial

9

evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell*, 177 F.3d at 133.

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

        2.        <u>Leland Jackson, M.D./Camillus Family Health Associates</u>

The ALJ gave "little weight" to the opinion of Dr. Jackson because he saw the Plaintiff "only three times over the five year period from 2007 to 2011." (T. at 23.) More significantly, the ALJ also based her determination to give little weight to Dr. Jackson's opinion because "the overall treatment record, typically recorded by a clinician or licensed nurse practitioner, did not correlate to the severity of symptoms described in the medical source statement . . . ." *Id*. Plaintiff asserts that Dr. Jackson's opinion should have been accorded greater weight because he was indeed a treating physician notwithstanding what the ALJ perceived as "his infrequent personal examination of the claimant." (Dkt. No. 12 at 6.) Plaintiff also argues that Dr. Jackson's medical source statement was consistent with the treatment notes from his office and the overall record. *Id*. Defendant Commissioner argues that the weight the ALJ assigned to Dr.

10

Jackson's opinion was supported by the record. (Dkt. No. 16 at 4-6.[3]) The Court agrees with the Commissioner.

In a report signed by Physician Assistant ("P.A.") Audrey L. Suehs, and countersigned by Dr. Jackson, dated December 30, 2011, Dr. Jackson opined that Plaintiff had: (1) a slight degree of limitation regarding "restriction of activities of daily living;" (2) a moderate degree of limitation with "difficulties in maintaining social functioning;" (3) a constant degree of limitation regarding "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere);" and (4) repeated "episodes of deterioration or decompensation in work or work-like settings . . . ." (T. at 442.) He also opined that Plaintiff's impairments would cause her to be absent from work "more than 3 times a month." (T. at 443.) Dr. Jackson noted in the report that Plaintiff had a poor memory, mood disturbance, difficulty thinking or concentrating, social withdrawal or isolation, hostility and irritability, and decreased energy. (T. at 441.) Of note, Dr. Jackson and P.A. Suehs are general practitioners with Camillus Family Health Associates ("CFHA").

However, Dr. Jackson's findings on his examinations of the Plaintiff and the findings of other health providers at CFHA who treated Plaintiff over the course of five to six years, including P.A. Suehs, do not support Dr. Jackson's conclusions. Plaintiff treated at CFHA from December of 2006 to April of 2012. (T. at 357-400, 454-474.) She was seen for various conditions of her health including anxiety and bipolar illness. She often reported subjective complaints of a variety of psychiatric problems including depressed mood, irritability, anxiety, no

---

[3]  Citations to page numbers in the Defendant's Memorandum of Law refer to the page number in the original document rather than the page numbers assigned by the Court's electronic filing system.

motivation, increased worrying, mild agitation, and stress; however, on physical exam she repeatedly appeared healthy and had no signs of acute distress. (T. at 357, 359, 362, 365, 369, 372, 375, 378, 381, 386, 389, 393, 396, 399, 455, 458, 460, 463, 467, 470, 473.) More importantly, her objective psychiatric exams reported by the providers at CFHA, including Dr. Jackson and P.A. Suehs, consistently showed her: (1) comfortable and cooperative; (2) alert and oriented; (3) with intact recent and remote memory; (4) with no apparent anxiety, depression, or agitation; (5) with normal mood and affect appropriate to mood; (6) with good eye contact; (7) with clear and fluent speech; (8) with thought processes which demonstrate coherence and logic; (9) with associative thinking intact; (10) with clear flowing thought processes; (11) with normal attention span and concentration; (12) with realistic judgment; (13) with appropriate insight; (14) with knowledge and vocabulary consistent with education; and (15) without suicidal or homicidal thoughts. (T. at 358, 359, 362, 369, 372, 375, 378, 381, 384, 386, 389, 393, 396, 399, 455, 458, 463, 467, 470, and 473.) At one encounter on February 9, 2009, she was found to be "tremulous and . . . on the verge of tears at times." (T. at 384.) Yet on examination that day she still had an affect appropriate to mood; she showed good eye contact; her speech was clear and fluent; her thought processes coherent and logical; her associative thinking and recent and remote memory were intact; and her attention span and concentration were normal. *Id.* At a few encounters, her mood was reported as subdued, yet she was otherwise psychologically sound on objective examination at those office visits. (T. at 399, 455, 460, 463, 470, and 473.)

The ALJ supported her determination to give little weight to Dr. Jackson's opinion by pointing out that the treatment records from CFHA were by and large not consistent with Dr. Jackson's opinion. (T. at 24.) Based upon the records of CFHA outlined above, and particularly

the findings noted by the CFHA providers on physical examination of Plaintiff, I find the ALJ correctly determined the inconsistency of Dr. Jackson's opinion with those treatment records.

Likewise, Dr. Jackson's opinion is inconsistent with the opinion of the consultative examiner, Dr. Caldwell, a specialist in psychology. Dr Caldwell found Plaintiff on exam to be cooperative with an adequate manner of relating, adequate social skills, and adequate overall presentation. (T. at 406.) Similar to the physical findings on exam by the providers at CFHA, Dr. Caldwell noted Plaintiff's speech intelligibility was fluent, she had a clear voice and her expressive and receptive language was adequate. *Id.* Her thought processes were coherent and goal directed, her mood neutral, and her affect was of full range and appropriate. (T. at 407.) Her attention, concentration, and recent and remote memory skills were intact. *Id.* Her insight and judgment were fair, and her cognitive functioning was appropriate. *Id.*

Additionally, Plaintiff's testimony confirms she did not receive regular mental health counseling. (T. at 49-50.) At the hearing on August 27, 2012, she testified that she does not "believe in therapists" because "it doesn't help me anyway." (T. at 50.) Moreover, Plaintiff's activities of daily living show she is able to mentally function at a higher level than what Dr. Jackson expressed in his opinion. Plaintiff cares for her children. (T. at 58, 60, 203, 206.) She grocery shops, and visits family. (T. at 58-60, 203, 207.) She does simple cooking, and household cleaning and chores. (T. at 204-205.) She does her own personal care, and is able to drive to the store, medical appointments, and to visit her son and mother. (T. at 41, 59-60, 203, 206.) She likes to garden and read. (T. at 61, 206.)

The record also shows that Dr. Jackson's opinion is inconsistent with the findings and opinion of State Agency psychology examiner R. Nolan who, upon review of all the medical records, found Plaintiff to have mild restrictions with activities of daily living, moderate

13

difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T. at 424.) Nolan also found Plaintiff had no repeated episodes of deterioration. *Id*. The State Agency examiner further determined that Plaintiff was able to understand, execute and remember simple instructions and work-like procedures. (T. at 428.) She had mild or, at most, moderate restrictions in her abilities to sustain a normal workday and work week and maintain her attention and concentration for extended periods; to maintain a consistent pace; to adapt to changes in a routine setting; and to use judgement to make simple work-related decisions. (T. at 429.)

Therefore, I find that substantial evidence in the record, including the treatment notes from Dr. Jackson and others at CFHA, conflicts with Dr. Jackson's opinion and thus the weight given to it by the ALJ was proper. *See Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2) (opinion of treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and the opinions are contradicted by other substantial evidence in the record); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

The ALJ also noted that Dr. Jackson himself only treated the Plaintiff on limited encounters at CFHA. (T. at 23.) Plaintiff argues this was error because the ALJ did not consider Dr. Jackson as a treating source. (Dkt. No. 12 at 5.) However, the ALJ did not dispute that Dr. Jackson was a treating source. (T. at 23.) Rather, in weighing Dr. Jackson's opinion, the ALJ considered the relevant factors which include consideration of the length of the treatment relationship and frequency of examinations, and the nature and extent of the treatment

14

relationship; the ALJ also compared Dr. Jackson's opinion to the information in the overall treatment record. 20 C.F.R. § 404.1527(c)(2)-(6); *Snell*, 177 F.3d at 133 (the less consistent an expert's opinion is with the record as a whole, the less weight it will be given).

In short, I find that the ALJ provided good reasons for giving Dr. Jackson's opinion little weight. The ALJ considered the length of the treatment relationship and the frequency of exams; the nature and extent of the treatment relationship; and the consistency of the opinion with the medical evidence as a whole. (T. at 23-25.) There was no error as the weight the ALJ assigned to the opinion is supported by substantial evidence and the correct legal standards were applied.

### B. Step Five Determination

Plaintiff challenges the ALJ's step five determination which he claims was based upon erroneous testimony of the vocational expert because the expert did not provide testimony about jobs at an appropriate reasoning level given the Plaintiff's RFC, and because the expert's testimony conflicted with information in the Dictionary of Occupational Titles ("DOT").[4] (Dkt. No. 12 at 7-9; T. at 26-27.) The Commissioner contends that the ALJ obtained sufficient vocational expert testimony, and properly questioned the expert about any discrepancies in the DOT. (Dkt. No. 16 at 7-9.) The Commissioner is correct and the Court finds no fault with the ALJ's step five determination.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). The ALJ may apply the

---

<sup>4</sup> U.S. Department of Labor, *Dictionary of Occupational Titles* (4th ed. rev. 1991), www.oalj.dol.gov/libdot.htm (last visited March 20, 2015).

Medical-Vocational Guidelines (the "grids") or consult a vocational expert ("VE"). *See Heckler v. Campbell*, 461 U.S. 458, 462 (1983); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.

The VE may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00CV0556 (GLS), 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004). A VE's testimony is useful only if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981) (citation omitted). The ALJ is responsible for determining the claimant's capabilities based on all the evidence, and the hypothetical questions must present the full extent of the claimant's impairments to provide a sound basis for the VE's testimony. *Colon*, 2004 WL 1144059, at *6. However, there must be "'substantial record evidence to support the assumption upon which the [VE] based his opinion.'" *Id*. (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

According to the Regulations, "[w]ork exists in the national economy where there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). "Courts have generally held that what constitutes a "significant" number is fairly minimal." *Fox v. Barnhart*, No. 6:02-CV-1160 (FJS/RFT), 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009) (collecting cases).

Here, the ALJ properly obtained the testimony of a VE to determine whether jobs existed in the national economy for an individual with the Plaintiff's age, education, work experience, and established RFC. (T. at 26-27, 68-78.) The VE clearly opined that there were jobs in the

16

national economy that Plaintiff could perform considering her limitations set forth in the RFC. (T. at 69-74.) In her hypothetical questions to the VE, ALJ Wakshul correctly included the limitations found to be based upon substantial evidence. *See Dumas*, 712 F.2d at 1554 (ALJ properly relied on VE's testimony since the hypothetical was based upon the ALJ's RFC assessment, which was supported by substantial evidence).

For the reasons noted herein, I find the ALJ obtained sufficient VE testimony, and properly questioned the VE about any discrepancies with the DOT at the step five determination. Stephen P. Davis, the VE here, testified to Plaintiff's ability to perform the occupations found at step five of the sequential evaluation process, with the full and appropriate hypothetical RFC considered. (T. at 70-71.) Mr. Davis was found qualified, and then properly testified that Plaintiff could perform the four jobs cited by the ALJ based upon Plaintiff's established RFC. (T. at 27, 68, 70-73.) These jobs included Hand Packager (DOT# 920.587-018), Lab Equipment Cleaner (DOT# 381.687-022), Key Cutter (DOT# 709.684-050) and Tumbler Machine Operator (DOT# 559.685-178). *Id*.

Plaintiff argues that all of these jobs exceed Plaintiff's RFC because they have a reasoning level of 2 and because the ALJ did not ask the VE whether his testimony conflicted with the DOT. (Dkt. No. 12 at 7-8.) However, a reasoning level of 2 is defined as an ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving few concrete variables in or from standardized situations." *See* DOT, Appendix C. Courts have held that this "does not contradict a mandate that work be simple, routine and repetitive." *Fiozzo v. Barnhart*, No. 05–CV–561 (LEK/VEB), 2011 WL 677297, at *9 (N.D.N.Y. Jan. 19, 2011) (quoting *Edwards v. Astrue*, No. 5:07-CV-898 (NAM/DEP), 2010 WL 3701776, at *15 (N.D.N.Y. Sept. 16, 2010)); *Roos v.*

17

*Astrue*, No. 06 Civ. 15284(GWG), 2008 WL 2309166, at *19 (S.D.N.Y. June 4, 2008); *see also Cross v. Astrue*, No. 08-CV-0425 (VEB), 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009) (ALJ's determination that the plaintiff's work must be simple, low-stress and entry level, with no complex decision-making, no planning, scheduling or report writing, no multi-tasking and little change in the work environment and infrequent interaction with the public or co-workers was consistent with jobs with a reasoning level of 2 or 3); *Edwards,* 2010 WL 3701776, at *15. Here, Plaintiff's RFC was significantly less restrictive than the claimant's in *Cross,* therefore the VE properly testified and the ALJ properly concluded that jobs with a reasoning level of 2 were within her capabilities.

Plaintiff next argues that the lab equipment cleaner job requires exposure to detergents, acids, acetone baths, and cleaning solutions, which is inconsistent with the limitation to occasional exposure to environmental irritants. (Dkt. No. 12 at 8.) However, the DOT defines this exposure as only "occasional," which is within the RFC determined by the ALJ. (T. at 21; *see* DOT # 381.687-022.) Even without considering the job of lab equipment cleaner, the VE testified to three other jobs Plaintiff could perform within her RFC limitations, which is a significant number of jobs within the meaning of the Regulations. *See Fox*, 2009 WL 367628, at *20; 20 C.F.R. §§ 404.1566(b), 416.966(b).

Additionally, there was no actual conflict between the DOT and the VE's testimony, therefore remand is not necessary even assuming, *arguendo*, that the ALJ erred in failing to question the VE further. *See, e.g., Edwards*, 2010 WL 3701776, at *14 (finding simple routine work consistent with reasoning level 2 and noting that any failure to follow SSR 00-4p is harmless where there is no conflict with the DOT) (citation omitted); *Peck v. Astrue*, No. 07-CV-3762 (NGG), 2010 WL 3125950, at *10 (E.D.N.Y. Aug. 6, 2010) (holding that an ALJ is not

required to ask a rote question where there is no indication of conflict with the DOT) (citation omitted).

Nevertheless, here the ALJ properly evaluated Mr. Davis' testimony within the meaning of Social Security Ruling 00-4p. *See* 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). The Administrative Law Judge asked Mr. Davis: "Is your testimony consistent with the information in the Dictionary of Occupational Titles?" (T. at 74.) Mr. Davis replied, "It is, your honor, except off task is not really addressed by the DOT, that's basically a result of 35 years' experience doing job analyses and meeting with employers and, probably more importantly, my knowledge of data people things, which is the middle three digits of the DOT number . . . ." (T. at 74; DOT, Appendix B.) Social Security Ruling 00-4p requires, "when there is an apparent unresolved conflict between [vocational testimony] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict . . . as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." 2000 WL 1898704, at *2. The Administrative Law Judge here elicited such testimony through the required inquiry, to which Mr. Davis responded adequately. There is no further apparent conflict that requires additional explanation by the ALJ.

In sum, the ALJ asked the VE appropriate hypothetical questions which included the limitations in the RFC as determined by the ALJ to be based upon substantial evidence. (T. at 69-74.) The DOT is a reliable official source of job information and Plaintiff's implication that the VE must have misunderstood the requirements of the positions to which he testified has no support in the record. Accordingly, I find the ALJ properly retained and relied on the testimony of the VE, and provided the VE with the full extent of Plaintiff's impairments so as to allow the expert to base his opinion on "substantial record evidence." *Dumas*, 712 F.2d at 1554. Because,

as determined above, the VE's testimony is consistent with Plaintiff's RFC finding and consistent with the information contained in the DOT, I find the ALJ's decision that Plaintiff was not under a disability within the meaning of the Social Security Act was based upon correct legal standards and upon substantial evidence.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 23, 2015
       Syracuse, New York

_____
Therèse Wiley Dancks
United States Magistrate Judge